UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14269-CIV-MOORE/MAYNARD

VICTORIA LYNN BERRY,

    Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security Administration,[1]

    Defendant.
_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 17)

THIS CAUSE comes before the Court upon the above referred motion. Having reviewed the Motion, Response, administrative record, and having held a hearing on June 29, 2021, the undesigned recommends Plaintiff's Motion be denied for reasons set forth below.

## BACKGROUND

This case involved a determination of Plaintiff Victoria Lynn Berry's ("Plaintiff") application for disability insurance benefits on November 8, 2017. R.[2] 92, 189. In her application, Plaintiff alleged disability beginning on December 18, 2013 due to chronic bilateral knee pain, chronic bilateral ankle pain, plantar fasciitis in both feet, chronic pain all over, cirrhosis of the liver, sleep apnea with CPAP, anxiety, and bilateral carpal tunnel. R. 81. On June 5, 2019, Plaintiff

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Andrew Saul as the Defendant. No further action need be taken to continue this suit consistent with the Social Security Act. *See* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2] References to "R. –" are to pages of the transcript of the administrative record.

moved to amend her onset date of disability from December 18, 2013 to September 20, 2016. R. 204.  Plaintiff's application was denied initially and upon reconsideration. R. 91, 101. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held on July 8, 2019. R. 36.  Plaintiff appeared, represented by counsel.

On July 31, 2019, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled as defined by the Social Security Act.  R. 29.  The ALJ determined that Plaintiff had the severe impairments of chronic liver disease, gastritis and duodenitis, mild peripheral neuropathy, obesity, chronic joint pain, osteoarthritis/degenerative joint disease bilateral feet/ankles, and plantar fasciitis.  R. 18. Based on those impairments, the ALJ determined that Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with certain limitations.  R. 21. Specifically, the ALJ determined that Plaintiff can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, kneel or crawl; can frequently stoop, crouch and balance; must avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, irritants such as fumes, odors, dust, and gases; and must avoid moderate or occasional exposure to any hazards such as dangerous moving machinery and unprotected heights.  The ALJ found that the Plaintiff could perform her past relevant work as a medical assistant.  R. 29.  Ultimately, the ALJ concluded that Plaintiff was not disabled. R. 29.

Plaintiff requested administrative review of the ALJ's unfavorable decision, alleging that the decision was contrary to the medical evidence and relevant regulations.  R. 184-88.  The Appeal Council denied Plaintiff's request for review, R. 1, thereby making the ALJ's decision "final."  42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). On July 30, 2020, Plaintiff filed the instant action seeking judicial review of the ALJ's decision. DE 1.  Plaintiff has exhausted her administrative remedies and, as such, this case is ripe for review under 42 U.S.C. § 1383(c).

## STANDARD OF REVIEW

A district court court's review of the Commissioner's decision is limited to determining whether the decision as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is defined in this context as relevant evidence which a reasonable person would accept as adequate to support the conclusion reached. *Williams v. Astrue*, 416 F. App'x 861, 862 (11th Cir. 2011); *see also Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a mere scintilla, but less than preponderance") (quoting *Bloodworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, considering evidence favorable as well as unfavorable to the Commissioner's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). If the Commissioner's decision is found to be supported by substantial evidence, then the reviewing court must affirm the decision, even if proof preponderates against it. *Dyer*, 395 F.3d at 1210. It is not the place of the reviewing court to reweigh the evidence or substitute its judgment for that of the Commissioner. *Id*.

A claimant must be "disabled" to be eligible for SSI. A claimant is disabled if she is unable to "engage in any substantial activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). A claimant bears the burden of proving that he is

disabled. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); 20 C.F.R. §§ 404.1512(a), 416.912(a).

The Social Security Regulations require the ALJ to undertake a five-step, "sequential" evaluation process for determining whether a plaintiff is disabled. At step one, the ALJ must determine whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the ALJ determines the plaintiff is engaging in substantial gainful activity, then he or she is not disabled. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). At step two, the ALJ must determine whether the plaintiff suffers from a medically determinable impairment, or a combination of medically determinable impairments that is "severe". 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is "severe" within the meaning of the regulations if it significantly limits a plaintiff's ability to perform basic work activities. An impairment is "not severe," however, when medical or other evidence establish just slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on a plaintiff's ability to work. *Id*. at §§ 404.1522, 416.922; Social Security Rulings ("SSRs") 85-28, 16-3p. At step three, the ALJ must determine whether the plaintiff's impairment(s) meet or equal the criteria of an impairment listed under 20 C.F.R. §§ 404, Subpart P, Appendix 1. If so, the plaintiff is considered disabled; if not, then the analysis proceeds to step four. Step four is a two-prong process where the ALJ must assess: (1) the plaintiff's residual functional capacity ("RFC") and (2) the plaintiff's ability to return to his or her past work. The regulations define RFC as the most a plaintiff can still do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Once the ALJ determines the RFC, the ALJ must determine whether the plaintiff has the RFC to perform any past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the plaintiff can return to his or her past relevant work, then the plaintiff is not disabled. If the plaintiff cannot

perform past relevant work, then a prima facie case of disability is established and the analysis proceeds to step five where the burden shifts to the Social Security Administration to show that there is other work in the national economy that the plaintiff can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018). The ALJ considers the plaintiff's RFC, age, education, and work experience to determine whether the plaintiff is capable of adjusting to other work. If the plaintiff can make an adjustment to other work that exists in the national economy, then the plaintiff is not disabled. If not, the plaintiff is considered disabled. 20 C.F. R. §§ 404.1520(g), 416.920(g).

## DECISION OF THE ADMINISTRATIVE LAW JUDGE

The ALJ in this case proceeded through the five-step analysis as follows: At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her amended alleged disability onset date of September 20, 2016. R. 18. At step two, the ALJ found that Plaintiff had the following severe impairments: chronic liver disease, gastritis and duodenitis, mild peripheral neuropathy, obesity, chronic joint pain, osteoarthritis/degenerative joint disease bilateral feet/ankles, and plantar fasciitis. R. 18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. R. 19. At step four, the ALJ found that Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) except she can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs, kneel or crawl; can frequently stoop, crouch and balance; must avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, irritants such as fumes, odors, dust, and gases and must avoid moderate or occasional exposure to any hazards such as dangerous moving machinery and unprotected heights.

R. 21. The ALJ then determined that Plaintiff possessed the capability to perform her past relevant work as a medical assistant. R. 29. Accordingly, the ALJ found that Plaintiff was not disabled

within the meaning of the Social Security Act from September 20, 2016 through September 30, 2017, the date last insured. R. 29.

## DISCUSSION

Plaintiff raises three issues on appeal. First, she argues that the ALJ erred by failing to consider physical therapy records showing Plaintiff had severe problems with standing and walking during the relevant time period and therefore could not have performed light work, which requires the ability to stand and/or walk for 6 hours in an 8-hour day.  Second, Plaintiff claims the ALJ failed to resolve an apparent inconsistency between the RFC's statement that Plaintiff should avoid exposure to any hazards and the Vocational Expert's (VE) testimony that Plaintiff can perform her past relevant work as a medical assistant.  Plaintiff contends that drawing blood and using medical instrumentation is a hazardous activity. Finally, Plaintiff asserts that because Plaintiff is of advanced age, does not have transferable skills, and is incapable of performing her past relevant work, the Medical Vocational Guidelines warrant a finding of disability.

### A. The ALJ's Determination of Plaintiff's Residual Functional Capacity is Supported by Substantial Evidence

Plaintiff argues that the ALJ erred by limiting her to light work in the RFC because physical therapy records showed Plaintiff could not stand for more than fifteen minutes in December 2016 and could not stand for more than sixty minutes or walk more than 100 yards in March 2017.  (DE 17 at 11 (citing R. 315, 352)).  An RFC is the ALJ's assessment of what a claimant can do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  Light work requires the ability to stand and/or walk for 6 hours in an 8-hour workday.  20 C.F.R. § 404.1567(a), (b); SSR 83-10.

In concluding that Plaintiff could perform light work, the ALJ partially relied on the opinions from the state agency physicians, Dr. Boukhemis and Dr. Amigo, but found Plaintiff to

be even more functionally limited than their medical opinions suggested.[3] The ALJ thoroughly considered the objective medical evidence, including an unremarkable x-ray of Plaintiffs' knees in February 2016 (R. 441-42), and Plaintiff's treatment records from her various physicians. Plaintiff's podiatrist, Dr. Keith Newman, noted left heel pain and advised a plantar fasciotomy and spur excision, but he also noted improvement with physical therapy. R. 287-88. Plaintiff's primary care physician -- Dr. Lee Singzon – treated Plaintiff during that time period and noted normal musculoskeletal range of motion, no edema/tenderness, and normal gait. R. 567-68, 570-71, 580-84, 585-87, 606. Plaintiff's other doctors, Drs. Alghadban and Dr. Lopez, made similarly normal findings. R. 508-09, 634-36. None of the medical sources noted the need for a sit/stand option or indicated that Plaintiff had limitations more restrictive than what is encompassed by light work. R. 287-88, 508-09, 567-68, 570-71, 580-84, 585-87, 606, 634-36. The ALJ reviewed records from Plaintiff's primary care physician, podiatrist, physical therapist and other doctors, her statements to her providers, and her activities of daily living, and found that the evidence supported the RFC of light work. R. 29.

The ALJ also considered Plaintiff's statements in her function report and at her administrative hearing about her limitations from ankle, foot, and knee pain. In a Function Report dated November 2017, Plaintiff stated that her feet, ankles, and knees were bad, and it was hard to be on her feet or sit for long periods of time. R. 227- 232. Regarding activities of daily living,

---

[3] The ALJ assessed the medical opinions as follows:

> The undersigned finds the residual functional capacity assessment submitted by the State agency medical consultants partially persuasive. While the assessments are generally supported by the consultants' review of the record and consistent with the medical record, it appears the consultants failed to consider the claimant's obesity, which the undersigned finds, in combination with her other severe physical impairments, supports a reduction in her residual functional capacity to the light exertional level.

R. 28-28.

Plaintiff wrote that she took care of her mother, helped her mother with cleaning and chores, and did her own house and yard work including mowing grass once or twice a year, and cleaning her house weekly. *Id*.

Plaintiff gave similar testimony at the administrative hearing on July 8, 2019. When asked what conditions caused her to believe she was disabled on or before September 30, 2017, Plaintiff mentioned nerve damage in her ankle, feet, knees, and legs, although she said her most disabling condition during that time was nausea. R. 55. Plaintiff testified that because of her plantar fasciitis back then, she could not walk sometimes and could not sit for very long. She estimated she could stand for ten minutes. R. 58. Regarding activities of daily living, Plaintiff testified that she does "everything" for her mother, including bathing, taking her to appointments, and grocery shopping. R. 56-57.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's foot, leg and ankle problems were not as severely limiting as she alleged. R. 22, 26. The ALJ paid close attention to Plaintiff's statements to her doctors about her knee, feet, and ankle impairments before, during and after the relevant time period. About a year and a half before the amended alleged onset date (April and May 2015), Plaintiff reported a sore ankle after mowing the yard and diffuse bilateral foot pain that was worse at night. R. 24. She was diagnosed with osteoarthritis of the ankle and foot and received medication and injections. She opted to try physical therapy before considering surgery. Her physical therapy was successful. On May 18, 2016, she reported doing 30% better with physical therapy and said she would do her own therapy while on vacation. On June 8, 2016 she said, "there hasn't been any stabbing pain in my foot, and I am surprised at how well I have been doing for not being at therapy for three weeks." On June 13 and 20, 2016 she reported "a little sore[ness]"

in her arch and heel after being on her feet all day or wearing sandals. By July 28, 2016, her physical therapist noted that Plaintiff "expressed significant improvement overall with PT," had canceled her last scheduled visit and was independent with her home exercise program, so she was being discharged from treatment.

Plaintiff's amended alleged onset date is September 20, 2016 and her date last insured is September 30, 2017. While her foot and leg pain returned during that time period, it again improved significantly with physical therapy, orthotics, and medication. In October 2016 (three months after successful discharge from PT), Plaintiff told her podiatrist that physical therapy had helped but she still had pain in her left heel. She was casted for orthotics. Two months later she returned reporting right heel pain and was prescribed physical therapy. On December 8, 2016, she returned to physical therapy. She told the physical therapist she "was doing ok until she lost her orthotics. Walking around without them seemed to trigger pain in heel." After a few weeks of therapy, she reported that the heel "felt better than it has in a long time following last therapy visit." In January 2017, she told the podiatrist that the pain was better and physical therapy was helping. On March 10, 2017, she told Dr. Newman that she had significant improvement with physical therapy. On March 16, 2017, she told the physical therapist that her legs had been "killing her," especially at night, but her feet were feeling better with no foot pain at the time. She decided to discontinue physical therapy, reporting 0/10 pain in her feet, but 6-7/10 pain in her lower legs. The physical therapist noted that Plaintiff was able to perform heavy work regarding home cleaning and maintenance. From March 2017 to her date last insured, Plaintiffs' doctors' examinations were fairly unremarkable, including normal gait, normal range of motion, no edema, no tenderness, nor ulcerations, and 5/5 strength in all extremities.

The ALJ also emphasized that Plaintiff's activities of daily living during the relevant time period suggest that her limitations were not as significant as she claimed. Plaintiff mowed grass, did chores, cleaned the house, shopped, and took complete care of her mother (including bathing and transporting to medical appointments). The ALJ noted that in June 2017, Plaintiff got poison ivy after working on her yard; in October 2018, Plaintiff told a doctor that her "right arm got 'jerked while tubing'"; in December 2018, Plaintiff told a doctor that she had accidentally hit her ankle with a sledgehammer while chopping wood with an ax; and in March 2019, Plaintiff was in Florida, walked "a lot," and her ankle was "okay" through the day although it was swollen and hurt in the evenings. During Spring and Summer 2019, Plaintiff reported shoveling a trench at her house, mowing grass over the weekend, helping her church lay 10,000 Easter eggs, and getting her and her mother's homes ready to move. Though some of these activities occurred after Plaintiff's date last insured, the ALJ pointed out that bathing her mother, using a sledgehammer, chopping wood, mowing grass, tubing, and digging a trench were inconsistent with disabling impairments and significant limitations. Substantial evidence supports the ALJ's determinations in this regard.

Plaintiff argues that the ALJ erred in failing to address two physical therapy entries from March 2017 indicating that Plaintiff had significant difficulty standing and walking. The first entry stated that Plaintiff had a moderate problem standing and could stand 15 to 60 minutes before experiencing symptoms of her plantar fascial fibromatosis. R. 343. The second entry stated that Plaintiff had a severe problem with walking and was only able to walk 100 yards or less without symptoms. R. 344. Plaintiff argues that these entries are inconsistent with the ALJ's finding that Plaintiff could perform light work, which requires the ability to walk and stand for 6 hours in an 8-hour day.

Plaintiff's argument is not convincing. Although the ALJ did not expressly discuss these particular physical therapy entries, an ALJ is not required to "specifically refer to every piece of evidence," so long as the decision is "enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotations omitted). Here, the ALJ explained her findings and pointed to sufficient evidence showing she considered the medical record and evidence in its entirety. Plaintiff's claim of error regarding the ALJ's RFC determination should therefore be denied.

**B. The ALJ's Determination that Plaintiff can Perform her Past Relevant Work as a Medical Assistant is Supported by Substantial Evidence**

Next, Plaintiff contends that the ALJ failed to resolve an apparent inconsistency between the RFC's limitation on exposure to hazards and the VE's testimony that Plaintiff could work as a medical assistant. When an ALJ relies on the testimony of a vocational expert at step four of the sequential analysis, the ALJ's hypothetical question to the vocational expert must include all of the claimant's functional limitations. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). In *Washington v. Commissioner of Social Security*, the Eleventh Circuit explained how an ALJ should handle apparent conflicts between a VE's testimony and information in the DOT. 906 F.3d 1353, 1361 (11th Cir. 2018). Any apparent conflict between the two must be identified and resolved by the ALJ. *Washington*, 906 F.3d at 1361; *see also* SSR 00-4P (S.S.A. Dec. 4, 2000). "[T]he ALJ must not only 'identify . . . any conflicts,' but also explain any discrepancy and detail in the decision how the discrepancy was resolved." *Washington*, 906 F.3d at 1362 (quoting SSR 00-4P (ellipses in original)). The ALJ is expected "to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363. An "apparent conflict" is one that is "reasonably ascertainable or evident from a review of DOT and the VE's testimony." *Id.*

at 1365.  "At a minimum, a conflict is apparent if a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*.  Failing to identify and resolve apparent conflicts is a breach of the ALJ's duty under SSR 00-4P to fully develop the record and provide a reasonable resolution of the claim. *Id*. at 1366.

Plaintiff contends that the ALJ erred at step four by not resolving an apparent conflict between the VE's testimony and the DOT.  Specifically, Plaintiff contends that the VE's testimony that a person with Plaintiff's RFC could perform work as a medical assistant is inconsistent with the DOT's explanation of the job requirements of a medical assistant, which include handling medical instruments, giving injections or treatments, and performing laboratory tests. *Dictionary of Occupational Titles* (4th ed., rev. 1991), Section 079.362–010. Plaintiff's brief emphasizes Plaintiff's testimony at the administrative hearing that she had to draw blood as a medical assistant. DE 17 at 14 (citing R. 29, 238).  Plaintiff argues that using needles and other medical instruments is considered to be a significant hazard by the Occupational Safety & Health Administration. According to Plaintiff, because a medical assistant is required to use needles and medical instruments, the job is inconsistent with avoiding exposure to "any hazards" as stated in the RFC.

Plaintiff's argument is without merit.  The RFC does not limit Plaintiff from exposure to "any hazards," as Plaintiff claims.  Rather, the RFC limits Plaintiff from exposure to "any hazards *such as dangerous moving machinery and unprotected heights*."  R. 21 (emphasis added).  There is nothing in the DOT that suggests a medical assistant is exposed to dangerous moving machinery or unprotected heights.  Indeed, at the administrative hearing, the VE clarified the ALJ's hypothetical by asking the following question: "So never ladders, ropes, or scaffolds, and no exposure to unprotected heights and no dangerous moving mechanical machinery. Is that correct?"

R. 70. The ALJ said yes, and the VE testified that such an individual could do the work of a medical assistant both as it is generally performed and as the Plaintiff actually performed it. The undersigned sees no conflict – apparent or otherwise – between using needles and medical instruments and avoiding hazards such as dangerous moving machinery. In addition, Plaintiff was represented at the administrative hearing, her counsel sought no clarification, and posed no questions to the VE in this regard. Tr. 70-79. There is nothing in the medical record to suggest Plaintiff has any difficulty using needles or other medical instrumentation. Because the ALJ's hypothetical question to the VE included all the limitations supported by the record, the VE's testimony provides substantial evidence that Plaintiff could perform her past relevant work as a medical assistant. Thus, Plaintiff's appeal based on this issue should be denied.

### C. The Medical Vocational Guidelines do not Warrant a Finding of Disability

Based on her argument that working as a medical assistant is precluded by the limitation to avoid exposure to hazards, Plaintiff contends that the medical vocational guidelines warrant a finding of disability. The undersigned addressed Plaintiff's premise above. Plaintiff has not demonstrated on appeal that the ALJ erred in concluding that she can perform her past relevant work as a medical assistant. Indeed, the ALJ's findings in this regard are supported by substantial evidence. Thus, the medical vocational guidelines do not apply in this case.

### CONCLUSION

**ACCORDINGLY**, this Court recommends to the District Court that the Plaintiff's Motion for Summary Judgment (DE 17) be **DENIED**, and the Commissioner's decision be **AFFIRMED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, the United States District Judge assigned to this case. Failure to file timely objections shall bar the parties from a *de*

*novo* determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988), *cert. denied*, 488 U.S. 958 (1988).

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 1st day of September, 2021.

                                        SHANIEK M. MAYNARD
                                      UNITED STATES MAGISTRATE JUDGE